UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW HAMPSHIRE

Brian Caswell

        v.                          Civil No. 13-cv-552-JD
                                    Opinion No. 2014 DNH 201
Carolyn W. Colvin,
Acting Commissioner,
Social Security Administration


O R D E R

        Brian Caswell seeks judicial review, pursuant to 42 U.S.C.
§ 405(g), of the decision of the Acting Commissioner of the
Social Security Administration, denying his application for
disability insurance benefits.  In support of reversing the
decision, Caswell contends that the Administrative Law Judge
("ALJ") failed to identify sleep apnea and obesity as limiting
impairments and improperly ignored the opinions of treating
medical sources, which resulted in errors in the residual
functional capacity assessment.  The Acting Commissioner moves to
affirm the decision.


Standard of Review

        In reviewing the final decision of the Acting Commissioner
in a social security case, the court "is limited to determining
whether the ALJ deployed the proper legal standards and found
facts upon the proper quantum of evidence."  Nguyen v. Chater,
172 F.3d 31, 35 (1st Cir. 1999); accord Seavey v. Barnhart, 276
F.3d 1, 9 (1st Cir. 2001).  The court defers to the ALJ's factual

findings as long as they are supported by substantial evidence.
§ 405(g).  "Substantial evidence is more than a scintilla.  It
means such relevant evidence as a reasonable mind might accept as
adequate to support a conclusion." Astralis Condo. Ass'n v.
Sec'y Dep't of Housing & Urban Dev., 620 F.3d 62, 66 (1st Cir.
2010).  Substantial evidence, however, "does not approach the
preponderance-of-the-evidence standard normally found in civil
cases." Truczinskas v. Dir., Office of Workers' Compensation
Programs, 699 F. 3d 672, 677 (1st Cir. 2012).


Factual Background

     Brian Caswell applied for disability insurance benefits and
supplemental security income on March 4, 2011, alleging that he
had been disabled since September 30, 2009.  He was thirty-four
years old at the time he alleged his disability began, and he had
a sixth-grade education.  His past work experience included jobs
as a window cleaner, paper loader, and a production line worker.


     A.  Medical History

     Caswell's medical history begins in September of 2010 when
he was treated at a hospital emergency room for chest tightness,
shortness of breath, and coughing.  Caswell reported smoking one
to two packs of cigarettes a day and drinking thirty to sixty
beers per week.  He denied illegal drug use.  Examination and
testing showed bronchitis but no acute abnormalities.

In October of 2010, Caswell met with Nurse Practitioner Katherine Furber at Manchester Community Health Center for chest pains and shortness of breath.  Caswell told N.P. Furber that he drank eighteen beers several times a week, to get drunk, and smoked two packs of cigarettes a day.  N.P. Furber noted that Caswell was wheezing, recommended a pulmonary exam, and advised Caswell to stop smoking and drinking.  A pulmonary exam done in December of 2010 showed mild to moderate chronic pulmonary obstructive disorder ("COPD").  Caswell continued to report breathing problems and coughing.

N.P. Furber referred Caswell to Dr. Peggy Simon at Elliott Pulmonary Medicine.  Caswell met with Dr. Simon on February 21, 2011, and reported respiratory symptoms, his COPD diagnosis, that he lived with pets, that he smoked more than a pack of cigarettes and two joints of marijuana daily, and that he used cocaine once a month.  Dr. Simon found that Caswell had normal respiratory effort and no musculoskeletal or neurological abnormalities.  Dr. Simon started Caswell on allergy and bronchial medications.

In August and September of 2011, Caswell had sleep studies done to address his complaints of snoring, waking because of shortness of breath, and daytime sleepiness.  Jeanetta C. Rains, Ph.D., signed the paperwork from the Center for Sleep Evaluation that noted that Caswell was obese and diagnosed central and obstructive sleep apnea.  Dr. Gregory Fanaras recommended a CPAP machine, weight loss, proper sleep hygiene, and avoiding alcohol.

On September 2, 2011, N.P. Furber told Caswell to go to the emergency room when he reported suicidal thoughts.  He also told N.P. Furber that he was drinking more, using a lot of crack cocaine, and was feeling angry.  At the emergency room, Caswell was oriented and in no acute distress but was depressed and was expressing suicidal thoughts.  He was referred to the Mental Health Center of Greater Manchester.

Caswell began treatment at the Mental Health Center on October 11, 2011.  Caswell reported, among other things, aggressive and assaultive behavior, paranoia, destructive behavior, panic attacks, and heavy substance abuse.  He said he was then using alcohol, cigarettes, Percocet, and crack cocaine. He said that when drunk he abused his girlfriend, which included hitting, choking, and threatening her with a knife.  He was fired from his last job because he directed obscenities at his boss when he was told not to smoke while working.  Caswell was diagnosed with depressive disorder, not otherwise specified, and personality disorder, not otherwise specified, and with physical dependence on cocaine, cannabis, and alcohol.  The intake clinician recommended substance abuse therapy along with case management and psychiatric services.

Caswell began counseling sessions with Rebecca Farver, APRN, and Jeff Stratton, LCHMC.  By January 3, 2012, Caswell told Farver that he was feeling better after decreasing alcohol and crack cocaine use.  On January 31, Stratton described Caswell as

irritable, agitated, and "snappy" because of his continued
alcohol and crack cocaine use.  In February, Caswell was still
drinking and using crack cocaine although he claimed to be
drinking less.  Despite mild improvement in February, Caswell was
again drinking heavily by May and was having related personal
problems.  He reported sobriety in June followed by a drinking
binge.  In July, Caswell reported feeling better because he was
drinking less.  After a fight in August that occurred while
Caswell was intoxicated, he was sober for several weeks and had
no angry outbursts while sober.

B.  Opinion Evidence

    A consultative psychologist, Dr. Janet Levenson, evaluated
Caswell for the New Hampshire Disability Determination Service on
May 11, 2011.  Caswell told Dr. Levenson that he had smoked
marijuana just before their appointment, that he smoked marijuana
several times each day, that he drank eighteen beers every other
day, and that he used crack cocaine.  He also said that he was
very abusive when he was drunk, that he had been charged with
domestic violence, and that he had spent time in jail for
breaking a "no contact" order.  He reported that his life was
focused on obtaining drugs and beer.

    In Dr. Levenson's opinion, Caswell's substance abuse and
depression about his situation prevented him from attending to
basic life activities and from interacting with people in a

productive and appropriate way.  Caswell's substance abuse
interfered with his understanding and memory but did not preclude
him from maintaining attention and completing tasks.  Dr.
Levenson diagnosed tobacco, alcohol, marijuana, and cocaine
dependence; adjustment disorder with depressed mood and anxiety;
and antisocial personality disorder.  Levenson expressed "great
doubt" about Caswell's ability to tolerate treatment.

On May 16, 2011, state agency psychologist, Dr. Laura
Landerman, reviewed Caswell's records and concluded that Caswell
had severe affective, personality, and substance abuse disorders
that were not expected to last for twelve months if Caswell
obtained treatment for substance abuse.  With substance abuse,
however, Caswell had moderate limitations in activities of daily
living and marked limitations in social functioning and
concentration, persistence, and pace.  Dr. Landerman stated that
she could not exclude substance abuse when assessing Caswell's
functioning.

A year later, on June 12, 2012, Dr. Almos Nagy, a
psychiatrist at the Mental Health Center of Greater Manchester,
completed a functional assessment form.[1]  Dr. Nagy found that
Caswell would have marked difficulties in his ability to
understand and remember instructions, locations, and work-like

---

[1]Although Caswell describes Dr. Nagy as a "treating
psychologist," the record does not include any treatment notes
from Dr. Nagy.  The parties' joint statement of material facts
does not identify Dr. Nagy as a treating source, and the only
reference to Dr. Nagy is the form he completed.

procedures; to carry out detailed instructions; to maintain
attention and concentration, to perform activities within a
schedule; to maintain regular attendance and be punctual; to work
with others and accept instructions from supervisors, to adhere
to basic standards of neatness and cleanliness; and other
limitations.  Dr. Nagy noted that the limitations he found were
because of a depressive disorder not otherwise specified, low
energy, poor concentration, depressed mood, sleep disturbance,
difficulty making decisions, and passive suicidal ideation.

On June 7, 2012, Mark Simmons, a physician's assistant,
completed a physical functioning questionnaire for Caswell.  P.A.
Simmons stated that Caswell had acute asthma attacks and was
unable to function during an attack.  P.A. Simmons thought that
Caswell's symptoms due to asthma attacks would interfere with his
concentration constantly so that he was incapable of even low
stress jobs.  With respect to physical activities, P.A. Simmons
thought that Caswell could not walk a city block without pain or
rest, that he could not sit or stand for more than five minutes
at a time for a total of two hours in a work day, that he would
need unscheduled breaks of an hour or more every day, that he
could rarely lift any weight or climb stairs; and that he would
miss more than four days of work each month.


C.  Administrative Proceedings

A hearing was held on June 14, 2012.  Caswell was
represented by counsel and testified that he was unable to work

7

because he could not breathe when doing any physical activity.
He described his medications and symptoms.  He testified that he
was depressed because of his decreased activity caused by
breathing problems.

Caswell also testified that he had had problems when working
because of his personality and problems with anger.  He said that
he did not do well when told what to do and had had shouting
matches at work.  He explained that he stopped working because
his boss said that he took too many days off, but he also said
that he was drinking a lot and that he had a child support issue.

Caswell further testified that he was getting counseling for
substance abuse, that he had reduced his marijuana use to one
joint per day and cigarette smoking to one pack per day because
of breathing problems, and that he still had problems with
cocaine.  He said that medication for alcohol abuse sometimes
worked but that he stopped taking the medication in order to
drink.  Caswell testified that he had never been sober for more
than twelve or thirteen days and did not know what it would be
like to live a sober life.  He said that he had been diagnosed
with sleep apnea and used a CPAP machine while sleeping.  At that
time he was sleeping eight to nine hours each night but was
waking up several times.

The vocational expert testified that a person with Caswell's
limitations, if restricted to light work without the ability to
climb ladders and scaffolding and unable to tolerate certain
environmental conditions, would not be able to return to

8

Caswell's former work.  The vocational expert testified that a person with those limitations could do jobs as a sorter, counter attendant, and hand cutter.  The vocational expert also testified that further environmental limitations, a limitation to sedentary work, and restrictions on contact with the public and fellow workers would not change the jobs he could do.  If, however, Caswell would have unscheduled absences of four days each month, that would preclude all work.  In response to other limitations posed by Caswell's counsel, the vocational expert testified that some would preclude the jobs he had identified.

After the hearing, the ALJ decided that additional expert medical evidence was necessary and scheduled a supplemental hearing which was held on October 2, 2012.  Caswell testified that his condition had not changed since the last hearing but that he was drinking less and smoking less marijuana.  He said he was seeing a counselor.

Dr. Leonard Rubin, a specialist in internal medicine, testified based on a review of Caswell's medical records.  Dr. Rubin stated that Caswell's COPD did not meet or equal a listed impairment, was mild to moderate, and would not limit significantly his ability to lift or carry.  The only limitations Dr. Rubin found were that Caswell could not do rapid running or walking, could not work in a noxious environment, and could only occasionally tolerate exposure to extreme cold, dust, fumes, and other irritants.

In arriving at his opinion, Dr. Rubin reviewed P.A. Simmons's treatment notes and opinions and testified that he disagreed with P.A. Simmons.  Dr. Rubin stated that P.A. Simmons's assessment exaggerated Caswell's problems and that the limitations P.A. Simmons found were not consistent with Caswell's pulmonary function studies and Caswell's testimony.  Dr. Rubin also pointed out that although P.A. Simmons limited Caswell to sitting for only five minutes at a time, Caswell had been sitting longer than that at the hearing.

Another vocational expert was present at the second hearing. She testified that someone who could not run or walk quickly, could tolerate only occasional exposure to certain environmental conditions, and was limited to uncomplicated tasks and to limited contact with the public could still do Caswell's former jobs as a line production worker and a binder.  In addition, the vocational expert stated that the individual could do other jobs and identified representative jobs to be a laundry sorter, electronics worker, basket filler, and hand packager.  She testified that unscheduled absences of two days or more each month would preclude employment.  In response to questions by Caswell's counsel, the vocational expert said that an individual with marked difficulties in social functioning and an inability to stay on task for more than five minutes would not be able to work.

The ALJ issued the decision on October 24, 2012, finding that Caswell was not disabled.  The ALJ found that Caswell had

10

severe impairments of COPD, polysubstance abuse, adjustment
disorder with depression and anxiety, and antisocial personality
disorder.  The ALJ also found that without substance abuse,
Caswell's impairments would not meet or equal a listed impairment
and that he could do his past relevant work as a production
worker and a binder.  The ALJ also found that without substance
abuse Caswell could do other work as a laundry sorter,
electronics worker, hand packager, and basket filler.  The
Appeals Council denied Caswell's request for review.

Discussion

In support of his motion to reverse and remand, Caswell
contends that the ALJ erred in his residual functional capacity
assessment and, as a result, lacks substantial evidence to
support the decision.  He argues that the ALJ erred by ignoring
his sleep apnea and obesity impairments, failed to give weight to
the mental functional capacity assessment completed by Dr. Nagy,
and improperly relied on Dr. Rubin's opinions and rejected the
physical limitations P.A. Simmons found.[2]  The Acting
Commissioner moves to affirm the decision.

Disability, for purposes of social security benefits, is
"the inability to do any substantial gainful activity by reason

---

[2]To the extent Caswell contends that the ALJ erred at Step
Two of the sequential analysis by not finding that obesity and
sleep apnea were severe impairments, any error was harmless
because the analysis did not conclude at that point.  See, e.g.,
McDonough v. Social Security Admin., Acting Comm'r, 2014 WL
2815782, at *10 (D.N.H. June 23, 2014).

of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 404.1505(a). The ALJ follows a five-step sequential analysis for determining whether a claimant is disabled. § 404.1520(a)(4). The claimant bears the burden, through the first four steps, of proving that his impairments preclude him from working. Freeman v. Barnhart, 274 F.3d 606, 608 (1st Cir. 2001). At the fifth step, the Commissioner determines whether other work that the claimant can do, despite his impairments, exists in significant numbers in the national economy and must produce substantial evidence to support that finding. Seavey, 276 F.3d at 5.

An additional element must be addressed in a disability analysis if the claimant abuses alcohol or drugs. See Evans v. Astrue, 2012 WL 4482366, at *3 (D.R.I. Aug. 23, 2012). "An individual shall not be considered to be disabled for purposes of [social security benefits] if alcoholism or drug addiction would (but for this subparagraph) be a contributing factor material to the Commissioner's determination that the individual is disabled." 42 U.S.C. § 423(d)(2)(C); see also 20 C.F.R. § 404.1535.

Although the First Circuit has not addressed the issue, nearly all other courts have concluded that the claimant bears the burden of showing that neither alcoholism nor drug abuse is a

material contributing factor to a disability determination.[3]  See
Sanchez v. Comm'r of Social Sec., 507 Fed. Appx. 855, 857-58 (9th
Cir. 2013); Cage v. Comm'r of Social Sec., 692 F.3d 118, 122 (2d
Cir. 2012) (citing cases); Harlin v. Astrue, 424 Fed. Appx. 564,
567 (7th Cir. 2011); Kluesner v. Asner, 607 F.3d 533, 537 (8th
Cir. 2010);  Velazquez v. Astrue, 2013 WL 1415657, at *12 (D.R.I.
Feb. 22, 2013) (citing cases); Tyson v. Colvin, --- F. Supp. 2d -
--, 2014 WL 1282164, at *8 (D. Neb. Mar. 27, 2014).  Further, the
Social Security Administration recently issued a ruling, Titles
II and XVI:  Evaluating Cases Involving Drug Addiction and
Alcoholism, SSR 13-2p, 2013 WL 603764, at *4 (Feb. 20, 2013), in
which it clarified that the claimant bears the burden of proof as
to whether drug addiction or alcoholism is a contributing factor
that is material to the alleged disability.  See Lee v. Colvin,
2014 WL 3747657, at *37 (W.D. Mo. July 30, 2014); McGill v.
Comm'r of Soc. Security Admin., 2014 WL 3339641, at *3 (W.D. Pa.
July 8, 2014).  Therefore, Caswell bears the burden of showing
that alcoholism and drug abuse were not contributing factors that
were material to the disability he alleged.

Whether a claimant's alcoholism or use of illegal drugs
materially contributes to the alleged disability is a
determination reserved for the Commissioner.  SSR 13-2p, at n.19.

---

[3]The Tenth Circuit has taken a different route in deciding
cases involving alcoholism or substance abuse, making it unclear
where that circuit would allocate the burden.  See, e.g., Salazar
v. Barnhart, 468 F.3d 615, 622-23 (10th Cir. 2006); see also
Cage, 692 F.3d at 122 (describing the Tenth Circuit as the only
"outlier").

Drug or alcohol addiction or abuse is a material contributing factor to disability if the claimant's limitations would not be disabling if he stopped using drugs or alcohol. Cage, 692 F.3d at 123; Grogan v. Barnhart, 399 F.3d 1257, 1264 (10th Cir. 2005); Bruggeman v. Barnhart, 348 F.3d 689, 694 (8th Cir. 2003); Velazquez v. Astrue, 2013 WL 1415657, at *11 (D.R.I. Feb. 22, 2013).

A.  Opinions

Caswell argues that Dr. Nagy was a treating source, that the ALJ erred in failing to give controlling weight to Dr. Nagy's mental functional capacity assessment, and that the ALJ should have given more weight to Dr. Levenson's opinions.  The Acting Commissioner contends that the ALJ properly assessed the opinion evidence.

The ALJ is required to consider the medical opinions in a claimant's record.  20 C.F.R. § 404.1527(b).  Medical opinions are evaluated based on the examining relationship, the treatment relationship, the amount of supporting evidence the medical source provides, the consistency of the opinion with the record, the medical source's specialization, and other factors brought to the ALJ's attention.  § 404.1527(c).  A treating medical source is the applicant's own physician, psychiatrist, psychologist, or other acceptable medical source.  20 C.F.R. § 404.1502.  A treating medical source's opinion about the nature and severity of a claimant's impairment will be given controlling weight if it

14

"is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." § 404.1527(c)(2).  When not entitled to controlling weight, a treating source's opinion is evaluated under the criteria applicable to other medical opinions.  Id.

### 1.  Dr. Nagy

Dr. Nagy is a psychiatrist at the Mental Health Center of Greater Manchester where Caswell was referred after being treated for mental health and substance abuse issues in the emergency department at Elliott Hospital.  The parties' joint statement of material facts states that after the intake process,[4] Caswell began attending regular counseling sessions at the Mental Health Center for Greater Manchester with Rebecca Farver, APRN, and Jeff Stratton, LCHMC.  The administrative record does not appear to include any records from Dr. Nagy that show he treated, examined, or even met with Caswell, and the parties' joint statement does not provide any reference to treatment notes made by Dr. Nagy.  Although Caswell identifies Dr. Nagy as a treating source, he has not shown that to be the case.

Dr. Nagy completed a two-page mental functional assessment form, dated June 13, 2012, but did not provide any supporting evidence for his assessment, did not explain his relationship

---

[4]The administrative record shows that the intake process was done by R. Sloane Franklin.

with Caswell, and did not describe the bases for his responses on
the form.  By making check marks, Dr. Nagy indicated that Caswell
would have marked difficulties in a variety of activities.  In
response to the question asking for a diagnosis and medical or
clinical findings that support his assessment, Dr. Nagy wrote
only that the limitations were because of a depressive disorder
not otherwise specified, low energy, poor concentration,
depressed mood, sleep disturbance, difficulty making decisions,
and passive suicidal ideation.

The ALJ did not mention Dr. Nagy or his functional capacity
assessment.  If Dr. Nagy had been a treating source, the ALJ
should have determined whether to give his opinion controlling
weight and explained the weight given to Dr. Nagy's opinion.
§ 404.1527(c)(2).  While the deference is less, the ALJ is also
expected to evaluate nontreating medical source opinions.
§ 404.1527(c).

As the Acting Commissioner points out, however, even if the
ALJ had discussed Dr. Nagy's opinion in the decision, the opinion
would not support a finding that Caswell was disabled.  Dr. Nagy
provided no medical or clinical findings in support of his
opinion and did not mention Caswell's abuse of drugs and alcohol,
although contemporaneous treatment notes show that Caswell was
drinking and using crack cocaine during the time he received
treatment at the Mental Health Center of Greater Manchester.  For
that reason, Dr. Nagy's opinion does not show or even suggest

16

that Caswell's limitations would still be disabling if he stopped using drugs and alcohol.

Therefore, Dr. Nagy's opinion does not support a disability finding.  As a result, any error or omission is harmless and does not require that the decision be reversed and remanded.  See, e.g., Sheldon v. Colvin, 2014 WL 3533376, at *8 (D. Me. July 15, 2014); Beatty v. Colvin, 2014 WL 1779365, at *3 (D. Me. Apr. 29, 2014).

     2.  Dr. Levenson

Caswell argues that the ALJ ignored many of Dr. Levenson's opinions which were consistent with Dr. Nagy's opinions and which contradicted the opinions of Dr. Landerman.  Specifically, Caswell states that Dr. Levenson concluded that substance abuse, tobacco use, and depression all contributed to Caswell's inability to attend to activities of daily living and that substance abuse and personality issues prevented him from interacting appropriately with people.  Caswell appears to argue that opinion supports Dr. Nagy's opinion that depression caused substantial limitations in his ability to function in work related activities.  Dr. Levenson's opinion, however, attributes some or all of Caswell's impairments to substance abuse, which would preclude a disability finding, and Dr. Nagy did not address the substance abuse issue.  Therefore, Caswell's interpretation of those opinions is not supported by the record.

17

Caswell also notes that Dr. Levenson wrote that she did not expect treatment to be effective and argues that her opinion contradicts Dr. Landerman's opinion that substance abuse could be eliminated with treatment.  Caswell does not make clear what point he is trying to make with the issue of treatment.[5]  His burden is to show that he would be disabled even if he stopped alcohol and drug abuse.  Whether or not treatment would be effective does not appear to be material to that burden.

B.  <u>Residual Functional Capacity</u>

Caswell contends that the ALJ erred in failing to find that his diagnoses of obesity and sleep apnea were severe impairments and that in conjunction with COPD those impairments were disabling.  The Acting Commissioner, in her motion to affirm, establishes that a failure to find severe impairments at Step Two is harmless as long as the analysis proceeds through the remaining steps and also contends that Caswell failed to show that obesity and sleep apnea caused any functional limitations. In his response to the Acting Commissioner's motion to affirm, Caswell explains that he does not assert an error at Step Two but instead argues that the failure to consider sleep apnea and obesity along with COPD resulted in an erroneous residual

_____

[5]A lack of evidence of successful treatment for substance abuse supports an ALJ's denial of benefits due to substance abuse being a contributing factor material to the disability determination.  <u>Smith v. Astrue</u>, 2012 WL 3779769, at *5, n.2 (E.D. Wash. Aug. 31, 2012).

functional capacity assessment.  Caswell also contends that the
ALJ erred in relying on Dr. Rubin's opinions instead of P.A.
Simmons's opinions.

The ALJ found, as Caswell's residual functional capacity
assessment, that if he stopped substance abuse he could do a full
range of work at all exertional levels, but he would have to
avoid running and fast walking and more than occasional exposure
to temperature extremes and other environmental issues and was
limited to uncomplicated tasks and only brief and superficial
contact with the public.  A residual functional capacity
assessment determines the most a person can do in a work setting
despite his limitations caused by impairments.  20 C.F.R. §
404.1545(a)(1).  The Commissioner's residual functional capacity
assessment is reviewed to determine whether it is supported by
substantial evidence.  Irlanda Ortiz v. Sec'y of Health & Human
Servs., 955 F.2d 765, 769 (1st Cir. 1991); Pacensa v. Astrue, 848
F. Supp. 2d 80, 87 (D. Mass. 2012).

P.A. Simmons completed a pulmonary residual functional
capacity questionnaire and noted diagnoses of asthma, shortness
of breath, chest pain, sleep apnea, and COPD.  P.A. Simmons did
not identify obesity as a diagnosis that he considered in
completing the questionnaire.  The questionnaire focused on the
effects of asthma and COPD, and P.A. Simmons did not identify any
impairments caused by sleep apnea although he checked "fatigue"
as one of Caswell's symptoms.  P.A. Simmons stated that Caswell
could not tolerate even low stress jobs, could sit or stand for

only five minutes at a time; could sit, stand, or walk for less than two hours in a workday; would need daily unscheduled breaks of one hour or more; could rarely lift ten pounds, could never do postural activities except that he could rarely climb stairs; and would need to avoid environmental exposures.  P.A. Simmons did not address the effects of Caswell's substance abuse.

To show that an error in finding or considering impairments requires reversal, the claimant must show that the error or omission was outcome determinative.[6]  Chabot v. Social Security Admin., 2014 WL 2106498, at *10 (D.N.H. May 20, 2014).  Any error in failing to address limitations caused by Caswell's obesity and sleep apnea is harmless because Caswell has not provided evidence to show that those diagnoses caused any functional limitations.[7] See Briggette v. Colvin, 2014 WL 3548992, at *7 (D. Me. July 17, 2014).

Dr. Rubin testified at the hearing that the record documented a diagnosis of mild to moderate COPD that would give Caswell some shortness of breath but would not affect his ability

_____

[6]In contrast, when an ALJ finds obesity to be a severe impairment, the ALJ is expected to explain how that impairment affected the claimant.  See Kaylor v. Astrue, 2010 WL 5776375, at *3 (D. Me. Dec. 30, 2010).

[7]At the hearing, Caswell testified that he was using a CPAP machine for sleep apnea and was able to sleep for eight or nine hours each night, despite waking several times, and did not claim functional limitations caused by sleep apnea.  In addition, when sleep apnea was diagnosed, Dr. Fanaras recommended weight loss and alcohol avoidance as treatment.  Caswell has not shown that his alcohol use does not contribute to his sleep apnea.

to lift and carry to a significant degree.  Dr. Rubin found that
Caswell's only limitations were running and rapid walking and the
need to avoid working in a noxious environment.  Dr. Rubin
testified that other than environmental limitations and
limitations for running and rapid walking, Caswell would not have
any functional limitations on his work activities.

The ALJ questioned Dr. Rubin about P.A. Simmons's opinions
provided on the pulmonary residual functional capacity
questionnaire.  Dr. Rubin stated that P.A. Simmons had
exaggerated the problem as to the environmental restrictions and
noted that even at the hearing, Caswell had been sitting for
longer than five minutes, contrary to P.A. Simmons's opinion.

The ALJ found that the record did not support the severity
of symptoms that Caswell claimed.  The ALJ credited Dr. Rubin's
opinion as to Caswell's residual functional capacity and did not
credit P.A. Simmons's opinion for the reasons stated by Dr.
Rubin.  The ALJ also noted that Caswell had reported that he made
drug runs to get money which contradicted P.A. Simmons's
limitations on his ability to stand and walk.  Caswell argues
that the record does not include a physical residual functional
capacity assessment by a medical source that supports the ALJ's
assessment and that, therefore, the ALJ's assessment is
impermissibly based on his interpretation of raw medical data.[8]

---

[8]In fact, as a physician's assistant, P.A. Simmons was not
an acceptable medical source who can establish a medical
impairment.  20 C.F.R. § 404.1513(a).

Caswell is mistaken.  Dr. Rubin's opinion that Caswell's only physical limitations were running and rapid walking supports the ALJ's assessment.  Substantial evidence to support a residual functional capacity assessment is not limited to treating source opinions.  See Ramos v. Barnhart, 119 Fed. Appx. 295, 296 (1st Cir. 2005) (citing Berrios Lopez v. Sec'y of Health & Human Servs., 951 F.2d 427, 431-32 (1st Cir. 1991), and Gray v. Heckler, 760 F.2d 369, 373 (1st Cir. 1985)).  Therefore, substantial evidence supports the ALJ's residual functional capacity assessment.

### Conclusion

For the foregoing reasons, Caswell's motion to reverse and remand (document no. 8) is denied.  The Acting Commissioner's motion to affirm (document no. 10) is granted.

The clerk of court shall enter judgment accordingly and close the case.

SO ORDERED.

_____
Joseph A. DiClerico, Jr.
United States District Judge

September 24, 2014

cc:  Karen B. Fitzmaurice, Esq.
     Tamara N. Gallagher, Esq.
     Robert J. Rabuck, Esq.